IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

**FOR PUBLICATION**

**Filed:  May 12, 1997**

| | | |
|---|---|---|
| LARRY KRICK, | ) | |
| Plaintiff-Appellant, | ) | LAWRENCE COUNTY |
| | ) | |
| Vs. | ) | HON. JIM T. HAMILTON, |
| | ) | JUDGE |
| CITY OF LAWRENCEBURG, | ) | |
| Defendant-Appellee. | ) | No. 01S01-9511-CV-00220 |

**For Plaintiff/Appellant:**

Ben Boston
Christopher V. Sockwell
Boston, Bates & Holt
Lawrenceburg, Tennessee

**For Defendant/Appellee:**

James A. Hooper
Hopper & Plunk, P.C.
Savannah, Tennessee

**FILED**

**May 12, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

**O P I N I O N**

JUDGMENT OF TRIAL COURT
REVERSED; CASE DISMISSED.                                ANDERSON, J.

We granted the motion for review to determine whether a policeman's coronary artery disease arose out of his employment for the City of Lawrenceburg. The Lawrence County Circuit Court found that the police officer sustained a compensable injury in the course and scope of his employment with the City of Lawrenceburg. On appeal, the Special Workers' Compensation Panel reversed and dismissed the case, finding no compensable injury. After carefully examining the record, we affirm the Panel's findings of fact and conclusions of law. The judgment of the trial court is reversed and the case dismissed.

## BACKGROUND

The proof is summarized as follows:

The plaintiff, Larry Krick, aged 44, worked as a police officer for the City of Lawrenceburg since 1981. On August 24, 1993, Krick was on routine patrol when he received a call that a woman had been shot and that her husband was holding a weapon on her. Krick and another police officer went to the residence of the woman and kicked in the front door to gain access to the house. As they entered the house, Krick drew his revolver. He and his fellow officer could only see about two feet in front of them, because the house was littered with boxes and debris. The officers were forced to crawl through the house to try to find the woman because of the accumulated boxes. They found the woman in a back bedroom lying on the bed. The woman had not been shot. No one else was in the house.

After the incident, Krick said that he was "nervous" and "tense." He experienced shortness of breath and had chest pain. Krick reported the pain to his supervisor, who advised him to seek medical attention. Krick then went to Baptist Hospital in Nashville, where he was seen by Dr. Charles Mayes, a cardiologist. Dr. Mayes diagnosed coronary artery disease. Krick later

underwent quadruple bypass surgery performed by Dr. Robert Hardin, a cardiovascular surgeon. After approximately nine weeks, Krick returned to work. After returning to work, Krick was promoted to lieutenant, and one month before the trial, he was promoted to captain. At the time of the trial, Krick was the second ranking police officer on the Lawrenceburg force and handled administration for the department when the chief of police was absent.

Krick testified that he had never been told that he had coronary artery disease prior to August 1993. He said that he had some hypertension, which he described as a "borderline thing." Krick was on medication for the high blood pressure, and stated that it was under control most of the time. He also said that he had successfully passed physical examinations before going to work for the police department in July 1981. Approximately one week prior to the incident on August 24, 1993, Krick became extremely hot and experienced shortness of breath, but no chest pain, while mowing grass along a riverbank. He had to lie down in a recliner until he cooled off. He then resumed mowing the yard.

The medical proof consisted of the testimony of several physicians by deposition and is summarized as follows:

Dr. Haresh H. Khatri, a doctor of internal medicine, testified that he had treated the plaintiff since 1988 and that he had prescribed medication for Krick's hypertension. He further stated that the plaintiff smoked one to two packs of cigarettes per day, and as early as 1991, he had diagnosed the plaintiff as having high cholesterol. When asked whether Krick's occupation as a police officer caused the blocked arteries, which resulted in the plaintiff experiencing angina[1], Dr. Khatri stated that the plaintiff had several risk factors for coronary artery disease, including smoking, hypertension and elevated cholesterol. He further stated that activity generally does not cause coronary artery disease, but

---

[1] Angina pectoris was defined as chest pain due to insufficient blood supply reaching an area of the heart.

-3-

activity can bring on a heart attack or angina, a symptom of blockage of the arteries. He finally conceded that he did not know what part job stress played in the plaintiff's heart disease.

Dr. H. L. Thomas, a family practitioner, testified that he had treated Krick since 1978 and had not found any evidence that the plaintiff had coronary artery disease. He stated that, in his opinion, stress could lead to a coronary spasm, which could cause a complete blockage of the arteries. He stated that activity does not cause coronary artery disease, but could cause a coronary spasm.

Dr. Robert Hardin, the surgeon who performed Krick's bypass surgery, testified that prior to the surgery Krick had a 90 percent blockage of the left main artery, 70 percent blockage of the mid-left anterior descending artery, 80 percent blockage of the first obtuse marginal artery, and complete occlusion of the right coronary artery. He also testified that there were multiple factors involved in Krick's coronary artery disease, and that stress was one of the factors. Dr. Hardin testified that after his recovery, Krick had sustained a 15 percent impairment based on the Fourth Edition of the Guidelines to Permanent Impairment, published by the American Medical Association.

Dr. Laurence A. Grossman, a Nashville cardiologist, did not treat Krick, but reviewed his medical records and the depositions of the plaintiff and Drs. Khatri and Hardin. Dr. Grossman stated that the plaintiff had "long-standing coronary heart disease," as demonstrated by the cardiac catheterization and coronary arteriographic study performed by Dr. Mayes. He testified that the three main factors establishing coronary heart disease are cigarette smoking, hypertension, and hyperlipidemia[2]. Dr. Grossman emphasized that Krick did not have a heart attack, but had severe angina, which resulted from the blocked arteries. Dr. Grossman testified that the August 24, 1993 incident did not cause

---

[2] Hyperlipidemia is a general term denoting elevated concentrations of fat in the plasma. Taylor, Elizabeth J., Dorland's Illustrated Medical Dictionary (27th Ed. 1988).

or aggravate Krick's coronary artery disease. The stress may have aggravated the symptoms of the disease, the angina, but did not cause the disease.

After considering the evidence, the trial court found that Krick's coronary artery disease arose out of and in the course and scope of his employment, and that he had sustained a 37 ½ percent vocational occupational disability.

On appeal, the Special Workers' Compensation Appeals Panel found that the evidence preponderates against the finding that the plaintiff's coronary artery disease arose out of his employment. The Panel therefore reversed and dismissed the case. We granted the motion for full court review and now affirm the Panel's findings of fact and conclusions of law for the reasons articulated below.

**COMPENSABLE INJURY**

In workers' compensation cases, the scope of review in this Court on issues of fact is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2)(Supp. 1996); Lollar v. Wal-Mart Stores, Inc., 767 S.W.2d 143 (Tenn. 1989). Considerable deference must be accorded the trial court's factual findings on issues related to the credibility of witnesses and the weight to be given their testimony. Humphrey v. David Witherspoon, Inc., 734 S.W.2d 315 (Tenn. 1987). However, where the issues involve expert medical testimony and all the medical proof is contained in the record by deposition, as it is in this case, then this Court may draw its own conclusions about the weight and credibility of that testimony, since we are in the same position as the trial judge. Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676-77 (Tenn. 1991). With these principles in mind, we review the record to determine whether the evidence preponderates against the findings of the trial court.

In support of his position that his heart disease was an accidental injury suffered during the course of his employment, Krick relies upon the statutory presumption of causation contained in Tenn. Code Ann. § 7-51-201(a)(1). The statute "establishe[s] a presumption that any impairment of health of [a] law enforcement officer[ ] caused by hypertension or heart disease resulting in hospitalization, medical treatment or any disability, shall be presumed (unless the contrary is shown by competent medical evidence) to have occurred or to be due to accidental injury suffered in the course of employment." In order to rely upon the presumption created by Tenn. Code Ann. § 7-51-201(a)(1), Krick must show that (1) he was employed by a regular law enforcement department; (2) he suffered from hypertension or heart disease resulting in hospitalization, medical treatment or disability in the course of employment; and (3) prior to the injury he had been given a physical examination which did not reveal the heart disease or hypertension. Stone v. City of McMinnville, 896 S.W.2d 548, 550 (Tenn. 1995). Once the prerequisites are established, then the presumption exists. In order to overcome the presumption, "there must be affirmative evidence that there is not a substantial causal connection between the work of the employee so situated and the occurrence upon which the claim for benefits is based." Id. See also Wingert v. Government of Sumner County, 908 S.W.2d 921 (Tenn. 1995). In other words, there must be "competent medical evidence" that there is a not a substantial causal connection.

In this case, the record establishes the three prerequisites necessary to establish the presumption that the coronary artery disease was an accidental injury suffered in the course of employment. Clearly, Krick was a police officer and he suffered the angina in the course of his work. Moreover, he testified that he had never been told, despite several physical examinations, that he suffered from coronary artery disease.

The issue in this case, therefore, is whether there is competent medical evidence that there is not a substantial causal connection between Krick's work as a police officer and the coronary artery disease. We agree with the Special Panel that there is. Accordingly, the defendant has overcome the presumption of causation.

In this case, Dr. Grossman, a qualified cardiologist, stated that job stress played no role in Krick's coronary artery disease. He stated that the disease was caused by cigarette smoking, hypertension, and hyperlipidemia. This testimony is affirmative evidence that there is not a substantial causal connection between Krick's work and his heart disease. Moreover, we note that the heart disease consisted of one completely blocked and three substantially blocked coronary arteries. Dr. Grossman testified that it was apparent from the tests performed by Dr. Mayes that the disease was long-standing. The chest pain experienced by the plaintiff at the time of the August 24, 1993 call was a symptom of the heart disease, not the disease itself. Moreover, it defies common sense to assume that Krick's arteries became occluded as a result of the stress involved in the August 1993 call.

As the Special Panel recognized, once the presumption of causation established by Tenn. Code Ann. § 7-51-201(a)(1) is rebutted by the defendant, it disappears, and the plaintiff must prove, by a preponderance of the evidence, that his condition resulted from an injury by accident arising out of and in the course of his employment. Thus, Krick was required to prove that his heart disease was an injury by accident.

Occupational disease is an injury by accident. Tenn. Code Ann. § 50-6-102(a)(5). Accordingly, in this case, Krick's heart disease is deemed to be an occupational disease if it arose out of and in the course of his employment. However, heart disease arises out of employment only if (1) the disease can be

determined to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (2) it can be fairly traced to the employment as a proximate cause, (3) it has not originated from a hazard to which the worker would have been equally exposed outside of the employment, (4) it is incidental to the character of the employment and not independent of the relation of employer and employee, (5) it originated from a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected prior to its contraction, and (6) there is a direct causal connection between the disease and conditions under which the work is performed. Tenn. Code Ann. § 50-6-301.

We find that the evidence preponderates against a finding that Krick's heart disease arose in the course and scope of his employment. The medical evidence does not establish a causal connection between the conditions of Krick's work and his coronary artery disease. Indeed, the evidence establishes that the disease was instead primarily caused by hypertension, cigarette smoking, and hyperlipidemia.

We have held that heart attacks are generally compensable as accidental injuries when they are precipitated by physical exertion or strain or a specific incident or series of incidents involving mental or emotional stress of an unusual or abnormal nature. Bacon v. Sevier County, 808 S.W.2d 46 (Tenn. 1991); Stone v. City of McMinnville, supra. The key to recovery in instances where it is alleged that physical activity caused the heart attack, is whether "the disabling heart attack is precipitated by the physical activity or exertion or physical strain of the employee's job." Id. at 552, quoting Bacon, 808 S.W.2d at 50. In instances where the plaintiff asserts that emotional stress caused the heart attack, the disabling condition "must be immediately precipitated by a specific acute or sudden stressful event." Stone v. City of McMinnville, 896 S.W.2d at 552, quoting Bacon, 808 S.W.2d at 52.

In this case, Krick did not experience a heart attack; he experienced angina, a symptom of heart disease. The angina may have been caused by the stress of the August 1993 incident; however, Krick's disability arose from the heart disease, not the chest pain. The medical proof preponderates against a finding that the heart disease was precipitated by the August 1993 incident. Thus, Krick has failed to establish the compensability of his heart disease.

## CONCLUSION

We therefore conclude that the evidence in this record preponderates against the trial court's finding that Krick sustained a compensable injury by accident. The judgment of the trial court is reversed and the case dismissed. Costs on appeal are taxed to the plaintiff/appellant.

_____
E. RILEY ANDERSON, JUSTICE

**Concur:**
Birch, C.J.
Reid and Holder, JJ.

Drowota, J., Not Participating