**FILED**

**March 12, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 10:16 AM**



## TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Employee: Sarah Brees | ) | Docket No. 2014-06-0072 |
| | ) | |
| Employer: Escape Day Spa & Salon | ) | State File No. 74650-2014 |

In accordance with Rule 0800-02-22-.02(6), please find attached the Workers' Compensation Appeals Board's Opinion Reversing and Remanding Interlocutory Order of Court of Workers' Compensation Claims in the referenced case.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Opinion Reversing and Remanding Interlocutory Order of Court of Workers' Compensation Claims was sent to the following recipients by the following methods of service on this the 12th day of March, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Sarah Brees | | | | | X | sarahgbrees@gmail.com |
| Vanessa Hall | | | | | X | vrhall@travelers.com |
| Joshua Davis Baker, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: Jeanette.Baird@tn.gov

**FILED**

March 12, 2015

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 10:16 AM



## TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Employee: Sarah Brees | ) Docket No. 2014-06-0072 |
| | ) |
| Employer: Spa Ventures, LLC d/b/a | ) State File No. 74650-2014 |
| Escape Day Spa & Ventures | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Joshua Davis Baker, Judge | ) |

---

**Reversed and Remanded – Filed March 12, 2015**

---

## OPINION REVERSING AND REMANDING
## INTERLOCUTORY ORDER OF COURT OF WORKERS' COMPENSATION
## CLAIMS

This interlocutory appeal involves an employee who alleges to have suffered a compensable cumulative trauma or repetitive motion injury to her right wrist. After providing a panel of physicians and initial medical care, the employer denied compensability on the basis there was no medical evidence of an injury that meets the statutory standard for a cumulative trauma or repetitive motion injury. The court of workers' compensation claims awarded medical and temporary disability benefits, finding that the employee's testimony, coupled with the opinion of the employee's physician that the employee's tendonitis "is more likely caused by her employment," was sufficient to establish causation. The court of workers' compensation claims found there was no causation opinion from the authorized treating physician to which the statutory presumption of correctness applied. The employer has appealed. Having carefully reviewed the record, we reverse the decision of the court of workers' compensation claims and remand the case to the trial court.

1

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner, joined.

Vanessa Hall, Franklin, Tennessee, for the employer-appellant, Spa Ventures, LLC d/b/a Escape Day Spa & Salon

Sarah Brees, Nashville, Tennessee, employee-appellee, *pro se*

## Factual and Procedural Background

Sarah Brees ("Employee") is a 41 year-old resident of Nashville, Tennessee. She has worked as a massage therapist for thirteen years. She began working for Spa Ventures, LLC d/b/a Escape Day Spa & Salon ("Employer") as a massage therapist six and one-half years before her claimed injury. She described her work as involving "intense, rigorous massage, sports deep tissue on people like the linebackers of the Tennessee Titans." On September 12, 2014, she presented to a walk-in medical clinic, Care Spot, with complaints of left wrist pain that she described as occurring "all of a sudden."[1] She was advised by a physician's assistant that she had an overuse injury; that she should rest her wrist and apply ice on and off in 15 minute intervals several times a day; and that she should wear a wrist brace as needed for pain. She was instructed to stop working and to follow up with an orthopedic physician if her pain persisted over seven days.

Employee timely notified Employer of her injury, and she requested that her injury be reported to workers' compensation. Employer provided a panel of physicians to Employee from which she selected Dr. Jane Siegel of Tennessee Orthopedic Alliance to be her authorized treating physician. Employee's initial visit with Dr. Siegel occurred on September 29, 2014. Dr. Siegel examined Employee and reviewed x-rays. She concluded that Employee possibly had a triangular fibrocartilage injury. Dr. Siegel recommended that Employee undergo an MRI study of her right wrist; that she continue to use her wrist brace; and that she not use her right hand at work. Employee was asked to return to Dr. Siegel following the MRI study.

The MRI study was completed on October 3, 2014, and Employee returned to Dr. Siegel on October 15, 2014. The report of the visit notes that the MRI "does not show any [triangular fibrocartilage] injury or inflammation . . . ." Dr. Siegel noted that "[m]ost of the abnormality was read out as cystic changes in multiple carpal bones indicative of possibly some prior trauma." Dr. Siegel recommended that Employee continue to rest her wrist in the splint and that she start physical therapy. Dr. Siegel continued Employee's restriction against using her right hand at work.

---

[1] Describing "left wrist pain" in the medical clinic's record appears to be an error of the medical provider as the parties do not dispute that Employee's claim involves her right wrist.

2

On October 16, 2014, Employer sent a letter to Dr. Siegel inquiring about the doctor's diagnosis and advising that "[y]our medical opinion is essential to help determine whether Ms. Brees' claim should be accepted as compensable." Dr. Siegel did not answer the questions as presented in the letter, but she handwrote a response at the bottom of the letter with her signature. The letter, with Dr. Siegel's handwritten response, is set out below.

DEAR Jane Siegel, M.D.,

I am currently managing the Workers' Compensation claim for Sarah Brees. Ms. Brees is a 41 year old Massage Therapist. She reported to her employer on 9/15/14 that she wanted to file a claim for a Right wrist injury. She said that on 9/12/14, while she was at home, her Right wrist started hurting really bad and she couldn't use her hand/wrist so she had to see a doctor.

She went to CareSpot on 9/12/14. I am forwarding those notes for your review.

She is now treating in your office and was last seen on 10/15/14. Please advise of Ms. Brees' current diagnosis: *(R)wrist inflammation*
_____

Ms. Brees' claim is also being investigated for medical causation purposes.
Your medical opinion is essential to help determine whether Ms. Brees' claim should be accepted as compensable. Your medical opinion should be stated with a reasonable degree of medical certainty which is defined under the 2013 Workers' Compensation Reform Act as "more likely than not considering all causes as opposed to speculation."
Furthermore, your medical opinion is needed to determine if Ms. Brees' current diagnosis and medical treatment "arises primarily out of and in the course and scope of employment." The requirement "arises primarily out of" is satisfied when the employment contributed more than 50% in causing the injury when all possible causes are considered.
Please provide your expert medical opinion, to a reasonable degree of medical certainty, as to whether Ms. Brees' diagnosis and the need for treatment arises primarily out of and in the course and scope of employment with Spa Ventures:

       YES            NO

If you circled YES, please apportion the percentages of the diagnosis and need for treatment as follows:

_____ %     Pre-existing personal/medical conditions unrelated to employment;

_____ %     This date of injury and employment with Spa Ventures

_____ %     Other factors: please specify: _____

_____
Signature and date
Once completed, return this form to my attention. If you have any questions, please contact me at the telephone number or email address listed below.

*Impossible to say as there is no "injury" - Pt has pain in wrist of unknown etiology. All inflammatory cause is multifactoral - without a specific injury I cannot pin point the cause.*

FREEFORM

PAGE 1/2 * RCVD AT 10/20/2014 10:07:45 AM [Eastern Daylight Time] * SVR:TTRXNBM1/42 * DNIS:3092 * CSID: * DURATION (mm-ss):00-25

On October 20, 2014, Employer submitted a Notice of Denial of Claim for Compensation terminating Employee's benefits. Employer stated the following as its basis for denial of compensation: "No medical evidence of injury; not major contributing cause; no injury per statutory definition; right to reserve."

Employee returned to Dr. Siegel on November 12, 2014, using her private health insurance to pay for the expense of the treatment. On November 13, 2014, Dr. Siegel completed a form indicating that Employee's diagnosis was wrist tenosynovitis; that Employee's first date of disability was September 12, 2014; that the doctor had not

3

released Employee to return to work; and that Employee's next appointment date had not been scheduled.

Employee testified that after "resting my right wrist for quite a long time and not seeing that much improvement, I sought another opinion, and it was through – and it was on the list of the people – doctors that was given to me by [Employer]." Employee arranged to be seen by Dr. Paul Abbey, and she again used her private insurance to pay for the expense of the treatment.

Employee was initially seen by Dr. Abbey on December 12, 2014, with a chief complaint of chronic right wrist discomfort. The report of the visit states that Employee "noted for the last couple of months progressive dorsal ulnar discomfort. No particular injury is noted. Patient is massage therapist. She has noted some improvement with splinting." Dr. Abbey's assessment was "tenosynovitis, hand/wrist." After examining Employee, Dr. Abbey elected to inject Employee's wrist, initially injecting Marcaine, which Employee reported to dramatically relieve her symptoms, followed with a Depo-Medrol injection. Employee was requested to "follow up if not improved within 2-3 weeks," and Dr. Abbey included in the report of the initial visit on December 12, 2014, that Employee's "tendonitis is more likely caused by her present employment."

Employee returned to Dr. Abbey on January 21, 2015, and she reported that she had returned to work and that her wrist started to bother her again. The report of Employee's January 21, 2015 visit stated that although Employee returned for another injection, "I think [she] would best be suited to hold off doing so, for the time being. We will cut back on activities, add a steroid Dosepak and compound cream for 2 weeks and then let her resume her activities if her symptoms worsen follow[-]up for further injection."

Following the hearing, the trial court filed an Expedited Hearing Order on February 10, 2015, finding that Employee has tenosynovitis and that the injury arose primarily out of and in the course and scope of her employment. The trial court also found that Dr. Abbey opined, within a reasonable degree of medical certainty, that Employee's work as a massage therapist caused her tenosynovitis. The trial court found that Dr. Siegel did not provide an opinion regarding the causal relationship between Employee's symptoms and her work activities; that the medical treatment provided by Drs. Siegel and Abbey was reasonable and necessary for the treatment of Employee's work-related condition; that Employer is responsible for the expenses of Employee's treatment with Drs. Siegel and Abbey; that Dr. Siegel took Employee completely off work for the period from September 12 through November 12, 2014; and that Employee is entitled to temporary disability benefits for the period September 12, 2014, through November 12, 2014, at Employee's weekly compensation rate of $633.87, for a total of $5,614.28. Employer timely filed an Expedited Hearing Notice of Appeal on February 18, 2015.

4

## Standard of Review

The standard of review applicable in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless "the rights of the party seeking review have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

    (A) Violate constitutional or statutory provisions;
    (B) Exceed the statutory authority of the workers' compensation judge;
    (C) Do not comply with lawful procedure;
    (D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly unwarranted exercise of discretion; or
    (E) Are not supported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-6-217(a)(2) (2014). Like other courts applying the standard embodied in section 50-6-217(a)(2), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

Employer raises three issues in this interlocutory appeal:

(1) Whether the trial court erred in finding that Dr. Siegel did not express a causation opinion;

(2) Whether the trial court erred in finding Dr. Abbey's causation opinion sufficient to establish Employee's tenosynovitis as a compensable cumulative trauma or repetitive motion condition as defined in Tennessee Code Annotated section 50-6-102(13); and if this finding was not in error, whether Dr. Abbey's causation opinion overcomes the statutory presumption of correctness applicable to Dr. Siegel's causation opinion; and

(3) Whether the trial court erred in awarding temporary disability benefits for the period of September 12, 2014, through November 12, 2014.

### A. Whether Dr. Siegel expressed a causation opinion

Tennessee Code Annotated section 50-6-102(13) defines "[i]njury" and "personal injury" to mean "an injury by accident, a mental injury, occupational disease including diseases of the heart, lung and hypertension, or cumulative trauma conditions including

hearing loss, carpal tunnel syndrome or any other repetitive motion conditions, arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee . . . ." An injury is accidental "only if the injury is caused by a specific incident or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence . . . ." Tenn. Code Ann. § 50-6-102(13)(A). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B). "An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D).

In the instant case, the trial court determined that Employee sustained a cumulative trauma or repetitive motion injury "through the overuse of her right hand and wrist in the course and scope of her employment." The trial court found that Dr. Siegel, the authorized treating physician selected by Employee from a panel, "did not provide an opinion regarding the causal relationship between [Employee's] symptoms and her work activities." Finding Employee to be a credible witness, the trial court concluded that Employee's testimony "proves by a preponderance of the evidence that her employment primarily caused her symptoms." Additionally, the trial court determined that the statement in Dr. Abbey's report that Employee's tendonitis "is more likely caused by her present employment" satisfies the requirement that the medical evidence show, within a reasonable degree of medical certainty, that "'a specific incident or set of incidents' caused the cumulative trauma condition of tenosynovitis." Accordingly, as stated by the trial court, "the Court finds that Dr. Abbey's opinion establishes a causal relationship between [Employee's] work and her injury."

Dr. Siegel was asked in the October 16, 2014 letter from Employer to provide her diagnosis and to provide her medical opinion "to help determine whether [Employee's] claim should be accepted as compensable." She was asked to state her medical opinion "with a reasonable degree of medical certainty," which was presented in the letter "under the 2013 Workers' Compensation Reform Act as 'more likely than not considering all causes as opposed to speculation.'" The letter advised that the doctor's opinion was needed "to determine if [Employee's] current diagnosis and medical treatment 'arises primarily out of and in the course and scope of employment.'" The letter stated that the requirement "arises primarily out of" is satisfied "when the employment contributed more than 50% in causing the injury when all possible causes are considered." The letter asked Dr. Siegel to "[p]lease provide your expert medical opinion, to a reasonable degree

6

of medical certainty, as to whether [Employee's] diagnosis and the need for treatment arises primarily out of and in the course and scope of employment with Spa Ventures."

Rather than circle either of the provided answers, "YES" or "NO," Dr. Siegel answered the question by writing that it is "[i]mpossible to say *as there is no 'injury.'*" (Emphasis added). The doctor wrote that Employee's wrist pain is "of unknown etiology," adding that "[i]f inflammatory cause is multifactorial - without a specific injury I cannot pinpoint the cause."[2] While Dr. Siegel did not include in her handwritten response the precise terms in section 50-6-102(13), the doctor expressed her opinion that there was no "injury;" that Employee's pain was "of unknown etiology;" and that without a specific injury she could not pinpoint the cause. The trial court misquoted Dr. Siegel to state that it is "[i]mpossible to say there is 'no injury,'" which has a decidedly different meaning that what Dr. Siegel actually wrote. While Dr. Siegel could have been more direct in addressing whether, considering all causes, Employee's work contributed more than fifty percent (50%) to her tenosynovitis, we respectfully disagree with the trial court's determination that Dr. Siegel did not render a causation opinion. While it is unclear whether Dr. Siegel wrote that "if inflammatory cause is multifactorial," or "all inflammatory cause is multifactorial," Dr. Siegel's response clearly opined that multiple factors may be involved with Employee's inflammation, and that "there is no 'injury.'"

B. *Whether Dr. Abbey's causation opinion rebutted the presumption of correctness applicable to Dr. Siegel's causation opinion*

A trial court generally has the discretion to choose which expert to accredit when there is a conflict of expert opinions. *Kellerman v. Food Lion, Inc.,* 929 S.W.2d 333, 335 (Tenn. 1996); *Johnson v. Midwesco, Inc.,* 801 S.W.2d 804, 806 (Tenn. 1990). *See also Hinson v. Wal-Mart Stores, Inc.,* 654 S.W.2d 675, 676-77 (Tenn. 1983). In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991).

In this case, neither doctor testified by deposition or otherwise. The parties stipulated to the admissibility of the doctors' records for purposes of the expedited hearing. Neither the medical records nor the choice of physician form, also introduced by stipulation, provides any information concerning the qualifications of Drs. Siegel and Abbey beyond the fact that they practice with Tennessee Orthopaedic Alliance and Premier Orthopaedics & Sports Medicine, PLC, respectively. Both doctors were selected by Employee, and both doctors were included on the panel of physicians provided by Employer. Dr. Siegel was selected as Employee's authorized treating physician in

---

[2] It is unclear from the doctor's handwriting whether she wrote, "If inflammatory cause is multifactorial . . . ," or whether she wrote, "All inflammatory cause is multifactorial . . . ."

accordance with Tennessee Code Annotated section 50-6-204(a)(3). "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(13)(E).

Determining whether the preponderance of the evidence rebuts the statutory presumption in section 50-6-102(13)(E) requires that we weigh in depth the factual findings and conclusions of the trial court. *See Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315 (Tenn. 1987). The trial court's findings and conclusions in this case are based on the testimony of Employee and the medical documentation. Although we give considerable deference to the trial court in assessing the credibility of witnesses who testify in person, *id.,* or telephonically, *Kelly v. Kelly,* 445 S.W.3d 685 (Tenn. 2014), the trial court occupies no better position than this Appeals Board in reviewing and interpreting documentary evidence. *See Krick v. City of Lawrenceburg,* 945 S.W.2d 709, 712 (Tenn. 1997); *Umanzor v. Zurich Am. Ins. Co.,* No. W2012-02568-WC-R3-WC, 2014 Tenn. LEXIS 277, n. 3 (Tenn. Workers' Comp. Panel Apr. 10, 2014). We may draw our own conclusions about the weight and credibility of expert medical opinions that are contained in documentary evidence. *See Foreman v. Automatic Sys., Inc.,* 272 S.W.3d 560, 571 (Tenn. 2008).

Guided by the foregoing principles, we note that Dr. Siegel saw Employee on two occasions and prescribed and reviewed x-rays and an MRI study before responding to Employer's written inquiry concerning causation. She noted that "[m]ost of the abnormality [in the MRI study] was read out as cystic changes in multiple carpal bones indicative of possibly some prior trauma," but she also noted "something like this could also be seen with some chronic inflammation." Dr. Siegel prescribed physical therapy, and she treated Employee on a third occasion following Employer's denial of Employee's claim.

In contrast, the report of Employee's initial visit with Dr. Abbey indicates that Employee did not come with "any accompanying studies." However, Employee testified that she "gave [Dr. Abbey] the same exact MRI that Dr. Jane Siegel had . . . ." At the initial examination, Dr. Abbey recorded that "patient is noted for the last couple of months progressive dorsal ulnar discomfort." The report states that "[n]o particular injury is noted." Dr. Abbey did note, however, that Employee "is a massage therapist." Dr. Abbey administered a steroid injection at the initial visit, and in the report of the initial visit under the heading "Instructions," he stated that Employee's "tendonitis is more likely caused by her present employment." While this statement in the initial report may be interpreted as indicating that Employee's work "contributed more than fifty percent (50%) in causing the injury," Dr. Abbey's opinion in no manner suggests that the doctor "considered all causes." Employee followed up with Dr. Abbey on January 21, 2015, due to her wrist starting to bother her again when she resumed work. Dr. Abbey

8

further treated Employee at that time, but he did not address causation in the report of the January 21, 2015 visit.

The trial court's determination on causation was not based upon a finding that one of the physicians was more credible than the other; rather, it was based upon a determination that Dr. Siegel did not provide a causation opinion and that she believed it was "[i]mpossible to say there is 'no injury,'" rather than what Dr. Siegel actually wrote, which is that it was "[i]mpossible to say *as* there is no 'injury.'" (Emphasis added). Having determined that Dr. Siegel provided a causation opinion that is entitled to a presumption of correctness in accordance with Tennessee Code Annotated section 50-6-102(13)(E), we further find that Dr. Abbey's causation opinion does not rebut Dr. Siegel's opinion by a preponderance of the evidence. Thus, Employee failed to meet her burden of establishing causation by a preponderance of the evidence, which is a necessary element of her prima facie case. Having determined that Employee did not establish causation, Employer's third issue concerning temporary disability benefits is pretermitted.

## Conclusion

Having reviewed the trial court's decision with the "presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise," Tenn. Code Ann. § 50-6-239(c)(7), we conclude that the preponderance of the evidence is that Dr. Siegel provided an opinion that there was no specific "injury;" that Employee's symptoms were of "unknown etiology;" and that Employee's condition was "multifactorial." Thus, the preponderance of the evidence falls short of establishing the statutory requirement that Employee's work activities be the "primary" cause of her condition, "considering all causes." Dr. Siegel's opinion that there is no "injury" that is the primary cause of Employee's condition is entitled to a presumption of correctness, and we find that Dr. Abbey's opinion does not rebut Dr. Siegel's opinion by a preponderance of the evidence. Finding that the rights of the parties have been prejudiced because the trial court's conclusion on the causation issue is contrary to the statutory provisions of Tennessee Code Annotated section 50-6-102(13), the trial court's determination is reversed and the case is remanded to the trial court in accordance with Tennessee Code Annotated section 50-6-217(a)(1)(A).

David F. Hensley, Judge
Workers' Compensation Appeals Board

9