

**FILED**

**February 26, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:00 A.M.**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Julian Phillips | ) Docket No. 2015-01-0208 |
| | ) |
| v. | ) |
| | ) State File No. 58335-2015 |
| Carolina Construction Solutions, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Audrey A. Headrick, Judge | ) |

---

### Affirmed and Remanded – Filed February 26, 2016

---

In this interlocutory appeal, the trial court issued an order denying the employee's request for medical and temporary disability benefits following a review of the file and without conducting an in-person evidentiary hearing as authorized by Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(c) (2015). The trial court ruled that the employee failed to meet his burden of proof at the pre-trial stage in light of his contradictory statements concerning his alleged work injury. The employee has appealed. After a careful review of the record, we affirm the trial court and remand the case for any necessary additional proceedings.

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Julie A. Reasonover, Nashville, Tennessee, for the employee-appellant, Julian Phillips

Stephen Morton, Nashville, Tennessee, for the employer-appellee, Carolina Construction Solutions

### Factual and Procedural Background

Julian Phillips ("Employee"), a sixty-one-year-old resident of Hamilton County, Tennessee, was hired as a construction manager on September 30, 2014 by Century

1

Employer Organization, LLC[1] ("Employer"), a temporary staffing agency for construction services. He claims to have suffered an upper back and neck injury on November 21, 2014. Prior to the alleged accident giving rise to the present claim, Employee reported experiencing sharp pains in his lower back on October 15, 2014, while carrying a heavy piece of conduit at work. The following day he told his supervisor that his back was sore and that he needed to "take it easy." He worked the following two days, but on October 20, 2014, he called his supervisor and reported that he was sick. On October 23, 2014 he sent a handwritten note to Employer explaining that his back was hurting worse and stating that he had initially told the supervisor he was sick because he was "reluctant to say it was [his] back, because [he] didn't want to lose [his] job." The letter explained that Employee had called a doctor "who said he thought [he] had a kidney infection," and that he "just want[ed] to get well and get back to work."

Employer accepted the low back claim as compensable and authorized medical treatment. On November 5, 2014, Employee was seen for follow-up at Doctors Express, a walk-in medical clinic, with complaints of low back pain.[2] The November 5, 2014 report states that Employee "is not currently on any medications," and that he "has gradually increased activity at work and is doing regular duty now." Employee was released "to resume usual work" and advised to return if he had problems.

In an affidavit dated November 17, 2015, which is included in the technical record but was not made an exhibit by the trial court,[3] Employee stated that on November 21, 2014, he was "repeatedly operating a vibrating drill (similar to a jack hammer) to place rods . . . into the ground," and "immediately began to experience upper back pain with left arm numbness and tingling into [his] left hand." The affidavit stated that, at the time, he "did not know that the cause of [his] upper back pain with left arm numbness and tingling into [his] left hand was the result of a neck injury." It also stated that "[p]rior to

---

[1] Pleadings and other documents filed on behalf of Employer identify it as "Century Employer Organization, LLC," "Carolinas Construction Solutions, Inc.," and "CCS Construction Staffing, Inc." The parties have not raised any issue concerning Employer's name or the identity of the actual employer.

[2] The record on appeal does not include any medical records dated prior to November 5, 2014 or any documents indicating whether Doctors Express was selected from a panel of physicians.

[3] The trial court attached an appendix to its order listing the documents contained in the technical record and the exhibits. Two exhibits were identified consisting of "Employee's Filing of Medical Records and Table of Contents" and "Employer's Submission of Evidence and Table of Contents." The appendix listed eight documents comprising the technical record and noted the following: "The Court did not consider attachments to the Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these pleadings or any attachments to them as allegations unless established by the evidence." Since the trial court did not conduct an in-person evidentiary hearing, it is unclear how factual statements in the affidavits or attachments to the filings were "established by the evidence." However, neither party raised as an issue the trial court's apparent consideration of the affidavits and other attachments to documents in the technical record. Thus, we need not address the issue.

November 21, 2014, [he] was not experiencing upper back or left arm numbness and tingling into [his] left hand."

Employee's affidavit also stated that he reported the November 21, 2014 incident to his supervisor on the job that same day and told the supervisor his "left arm was going numb after performing the repeated drill work." It further stated that Employee "also reported [his] work injury to Jason [Perillo], [his] manager/supervisor, within a couple of days after November 21, 2014 because [he] could not come back to work as a result of [his] injury." Employee has not worked since November 21, 2014. In an affidavit offered by Employer, Manager Jason Perillo stated that "[a]t no time during [Employee's] employment did he ever report to have sustained an injury to his neck from the use of power tools, or otherwise."

The first medical record dated subsequent to November 21, 2014 included in the record on appeal is a report of Employee's December 1, 2014 examination by Dr. Brian Smith, an orthopedic physician. The report notes that Employee, an "electrician for Walker Electric, . . . comes in today with complaints of pain [in] his left elbow that radiates up into his shoulder and numbness in his middle and index finger for about two weeks and pain in his 'funny bone.'" The report states "[h]e does not recall any injury," and that he "denies neck pain." There is no mention in the report of Employee using a vibrating drill or jack hammer, nor is there any mention of a November 21, 2014 incident. The report states that Employee "says he has had a steroid injection twice now in the emergency room, the last one was last night." Additionally, the report states that Employee "says he was given a sling to use and oral steroids." The record on appeal does not include any records of emergency room visits occurring before the December 1, 2014 office visit with Dr. Smith. The "Plan" in Dr. Smith's December 1, 2014 report includes the following:

> I discussed with him that in order to sort out where the compression is on the nerves he would need to have a nerve conduction study. I also discussed getting an MRI of the cervical spine to rule out radicular pain. However, the patient currently does not have medical insurance until next month and he is not sure what day it will go into effect once it is approved so he would like to wait on having these tests. He was given two steroid injections and a sling and hopefully this will quieten his symptoms down enough to get him through this period of time until his insurance is in effect. He was taking Robaxin and Prednisone and this helped, but it bothered his stomach. He says they gave him a prescription for Phenergan, but he has not got this filled yet. . . . We are limited on what we can do until we can get an MRI and NCS at this time. We will leave it open ended and see the patient back on a p.r.n. basis, sooner if his insurance gets approved.

On December 24, 2014, Employee wrote a letter to his supervisor and referenced "a generic [December 18, 2014] report from the [emergency room]," which was sent with the letter. The "generic report" consisted of two pages of Erlanger North Emergency Department Discharge Instructions. Employee's December 24, 2014 letter noted that the emergency department's report "contains the diagnosis of degenerative back disease," and stated that "[t]hey did a C.T. scan of my back to discover this." It noted that Employee "was never aware of [degenerative back disease] before." The letter stated "[t]his is the most recent doctor I went to," and that "I have tried to find a doctor for follow-up treatment, but because I have no insurance, they can't or won't treat me." The letter does not mention a November 21, 2014 work injury, or the development of symptoms following the use of vibratory equipment, but it includes a post script stating "[t]he first doctor you sent me to should have found this." Employer contends it was unaware Employee was claiming to have sustained a November 21, 2014 work injury until Employee filed a petition for benefit determination in July 2015.

Employee returned to Doctors Express on January 2, 2015. The report of this visit identified the appointment as a workers' compensation follow-up.[4] It indicated that Employee had been having left arm pain for two months and noted that Employee was previously seen for lumbar pain, which was reported to be "improved." The report stated Employee "started having pain while carrying heavy conduit pipes at work on shoulder, denies radiating of pain . . . [and that] he is also having numbness and tingling in 4th and 5th fingers." The January 2, 2015 report does not mention any complaints of increased symptoms following the use of a vibrating drill or jack hammer, nor does it identify a specific date of a work injury. The report indicated that the nurse practitioner assessed "[r]adiculitis, cervical, radicular of upper limb" and recommended Employee "follow up with orthopedic surgeon for MRI to rule out nerve impingement." Employer subsequently provided a panel of orthopedic physicians from which Employee selected Dr. Jason Eck.[5]

Employee was first seen by Dr. Eck on January 21, 2015. The report identified Employee's chief complaint as "back and left arm pain," and stated that he "presents with complaints of upper and lower back and left arm pain to the fingers." The report noted that Employee "states he started having low back pain in October 2014 and upper back and left arm pain since 11/21/2014" and that Employee states "his pain started by using a jack hammer at work." It documents complaints of "numbness/tingling in the left upper extremity and somewhat in the right upper extremity, weakness in the left upper extremity and pain in the neck and low back with coughing/sneezing."

---

[4] The record on appeal is silent as to whether Employer authorized the January 2, 2015 appointment with Doctors Express. The trial court stated that "[i]t appears that [Employer] authorized [Employee's] treatment at Doctors Express."

[5] It is unclear from the record whether Employer provided this panel as part of its handling of the October 2014 claim, or whether it provided the panel for a new claim of neck/arm pain.

Dr. Eck reviewed Employee's December 18, 2014 cervical and thoracic CT scans and noted that the cervical scan revealed "[m]ild to moderate multilevel degenerative change" and that the thoracic scan revealed "[m]ild degenerative changes." Dr. Eck's impression, as stated in the January 21, 2015 report, was as follows:

1. Left upper extremity weakness.
2. C5-C7 degenerative disc disease/stenosis.
3. Radiculopathy.
4. Current symptoms are likely related to his work injury aggravating pre-existing asymptomatic degenerative changes.

Dr. Eck recommended cervical fusion and restricted Employee from any work until his next appointment. He also prepared an order for the recommended surgery. On January 27, 2015 Employer denied the request for surgery.

Employee returned to Dr. Eck on February 16, 2015 with complaints similar to those reported on January 21, 2015, but noting "increased pain for the last 2-3 days." The report stated that Employee's "symptoms have progressively worsened since November," and noted that "[h]is surgery was denied by workers' compensation." Dr. Eck prescribed physical therapy, continued Employee's restrictions, and renewed his recommendation for a cervical fusion. Employee next saw Dr. Eck on March 9, 2015, at which time Dr. Eck noted that Employee "has failed all nonoperative [sic] treatments." He again recommended surgery.

On March 19, 2015, a representative of Employer's workers' compensation insurer sent an email to Dr. Eck's office requesting that Dr. Eck "provide his professional medical opinion as to whether the need for the cervical [fusion] is the result of the reported low back and hip injury from 10-15-14 or is this something that is not related to the 10-15-14 accident." The email asserted that Employee "did not report cervical pain as his injured body part and we never provided treatment to the cervical area." Dr. Eck responded to the email as follows in a March 20, 2015 letter:

> I have been treating this patient since 1/21/15. His complaints have always been consistent with pain to the upper back and lower back and left arm pain to the fingers. I do believe the injury is directly related to the workers' compensation injury which occurred *in October 2014.* I have recommended a cervical fusion. The result of this patient not having surgery could be permanent damage. (Emphasis added).

Employer subsequently submitted the recommendation and order for cervical fusion to its utilization review agent. On April 29, 2015, a utilization review nurse sent a letter to Dr. Eck advising of the utilization review and denying the request for the cervical fusion based on a peer review report from Dr. Kimberly D. Terry, a board certified

neurosurgeon. Dr. Terry's report referenced an October 15, 2014 date of injury and documented a teleconference with Dr. Eck. Dr. Terry's peer review utilization report answered "no," in response to the question: "Is a C5-7 anterior cervical discectomy, anterior interbody fusion, interbody cage, anterior instrumentation and grafting medically necessary?" Dr. Terry provided two bases for denying the cervical fusion. First, she stated Employee "is a current every day smoker, and there is no indication in the documents submitted that the patient is on a tobacco cessation program." The second basis was that "[t]here is no current imaging submitted for review indicating that the patient has degenerative changes at the C5 through C7 level with spinal stenosis." Neither Employee nor Dr. Eck appealed the utilization review denial.

Employee returned to Dr. Eck on June 10, 2015, and again on July 17, 2015. In the report of the July 17, 2015 visit Dr. Eck opined that Employee was unable to work, was permanently disabled, and had reached maximum medical improvement. Dr. Eck also continued to express the need for surgery, stating that Employee "needs surgery due to progressive deficit."

On July 27, 2015, Employee handwrote a statement "[t]o whom it may concern," which documented Employee's assertion of his claimed November 21, 2014 injury "at work." The statement explained that the delay "came because I didn't know what was wrong with me, but after seeking medical help on my own, it was finally discovered that I had indeed been injured at work, and the [workers' compensation] insurance [company] agreed, and started paying me." The statement noted that Employer refused to provide the recommended surgery, and it expressed Employee's frustration and his lack of understanding why his surgery had not been approved.

On August 13, 2015, Dr. Shay Richardson, a physician in practice with Dr. Eck, completed a Final Medical Report form concerning Employee. In the report, which does not include a date of injury, Dr. Richardson assigned Employee a medical impairment rating of 25% to the body as a whole based on the Sixth Edition of the AMA Guides to the Evaluation of Permanent Impairment.

The technical record includes a November 2, 2015 affidavit of Dr. Eck that was submitted as an exhibit to Employee's brief in which Dr. Eck stated he "was provided a history from [Employee] that his employment activities on November 21, 2014 consisted of continuous use of a vibrating drill (similar to jack hammering) to place rods ten (10) feet into the ground." He opined in the affidavit that "within a reasonable degree of medical certainty" Employee's "cervical and thoracic injuries are primarily a result of his employment on November 21, 2014." Dr. Eck additionally opined that Employee's "employment . . . on November 21, 2014 primarily resulted in an aggravation and progression of his pre-existing degenerative cervical condition." He recommended the cervical fusion in the affidavit "as a result of [Employee's] neck injury sustained on November 21, 2014." In addition, he opined the surgery "is medically necessary to care

6

[for] and treat [Employee's] neck injury and prevent worsening of permanent neurologic injury." Finally, Dr. Eck stated in his affidavit that he placed Employee at maximum medical improvement "due to workers' compensation denying his cervical surgery," and stated that if the surgery is approved "it is my opinion that [Employee] was not at Maximum Medical Improvement on July 17, 2015." The affidavit noted that Employee "has been out of work since November 21, 2014, and will be indefinitely due to his neck injury sustained on November 21, 2014."

Employee filed a petition for benefit determination on July 29, 2015. The parties were unable to resolve the disputed issues through mediation. Following the filing of a dispute certification notice, which raised as an issue whether Employee suffered from a pre-existing condition that was aggravated by a work-related injury, Employee requested an expedited hearing to address medical and temporary disability benefits. Although Employee initially requested an in-person evidentiary hearing, he subsequently requested the trial court to render a decision "on-the-record" rather than conduct an in-person hearing. An Agreed Order was entered that provided for an "on the record determination pursuant to Tenn. Comp. R. & Regs. 0800-02-21-.14(2)." On January 13, 2016 the trial court issued an order denying Employee's requested relief, finding Employee "is unlikely to prove the occurrence of an accident by a preponderance of the evidence at a hearing on the merits."

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A) Violate constitutional or statutory provisions;
(B) Exceed the statutory authority of the workers' compensation judge;
(C) Do not comply with lawful procedure;
(D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;
(E) Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

7

## Analysis

In his notice of appeal, Employee identifies the issues on appeal as whether he "is entitled to cervical surgery as recommended by his [authorized treating physician]," and whether he is entitled to "past and future temporary total disability benefits." In his brief on appeal, Employee identifies the following four issues:

1. Whether Employee suffered from a pre-existing condition that was aggravated by a work-related injury.
2. Whether Employee is entitled to additional medical care as recommended by his physician.
3. Whether Employee is entitled to past or future temporary total/partial disability benefits.
4. Whether Employee [met] his burden [to establish the requisites of an injury by accident].

It is well-settled that an injured worker has the burden of proof on every essential element of his or her claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). However, at an expedited hearing at which pre-trial benefits are at issue, the trial court is not required to hold a full evidentiary hearing before issuing an order for temporary disability or medical benefits. Tenn. Code Ann. § 50-6-239(d)(2) (2015). Instead, a trial court has the discretion to "enter an interlocutory order based on a review of the file upon determining that no additional information is needed." Tenn. Comp. R. & Regs. 0800-2-21-.14(1)(c) (2015). Moreover, at an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence but must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2014). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6. Furthermore, even with the lesser standard at an expedited hearing, there is a presumption "that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015).

Initially, we address an assertion in Employee's brief that the trial court should not have considered whether Employee sustained an injury in the course of his employment because the issue was not raised or identified in the dispute certification

8

notice. We disagree. Generally, unless permission has been granted by the trial court to present additional issues, only issues that have been certified by a workers' compensation mediator within a dispute certification notice may be presented to the court for adjudication. Tenn. Code Ann. § 50-6-239(b)(1) (2015). To determine what issues have been certified by the mediator in the dispute certification notice as contemplated in section 50-6-239(b), it is necessary to consider the document as a whole without reading its components in a vacuum. *Marzette v. Pat Solomon and Sons, Inc.*, No. 2014-08-0058, 2015 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (Tenn. Workers' Comp. App. Bd. Sept. 18, 2015).

In this case, although "[c]ompensability" was not checked on the face page of the dispute certification notice, "[w]hether Employee suffered from a pre-existing condition that was aggravated by a work-related injury" was checked in the list of issues. The resolution of this issue necessarily involves determining whether a compensable work accident occurred, and the issue checked on the dispute certification notice is listed as a sub-issue of "[w]hether Employee sustained an injury that arose primarily out of and in the course and scope of employment with Employer." Furthermore, Employee's brief submitted to the trial court in support of his request for benefits argued that he "sustained an injury by accident that arose primarily out of and in the course and scope of his employment with Employer." In its written response to Employee's brief, Employer specifically presented and argued as an issue "[w]hether Employee is likely to succeed upon the merits of his claim that he sustained an injury to his cervical spine on November 21, 2014, while using a vibrating drill." Accordingly, we find that marking as an issue on the dispute certification notice "[w]hether Employee suffered from a pre-existing condition that was aggravated by a work-related injury" was sufficient to raise as a disputed issue whether Employee sustained an injury arising primarily out of and in the course and scope of his employment.

We turn now to the dispositive issue, whether the preponderance of the evidence supports the trial court's determination that Employee did not come forward with sufficient evidence that he suffered a November 21, 2014 injury by accident while operating vibratory equipment. Because no in-person evidentiary hearing was conducted in this case, the trial court was limited to considering evidence in the form of affidavits, medical records, and other documents in the file that were submitted by the parties. The lack of an in-person evidentiary hearing resulted in the trial court's basing its determination on written documents without the benefit of hearing testimony and observing witnesses' demeanor. While this presents obvious difficulties in terms of assessing credibility and weighing conflicting statements, in this case Employee requested and received permission from the trial court to amend his request for an in-person evidentiary hearing, stating that "Employee has filed all information and documentation with the Court that would be used by Employee in an [in-person] hearing." Employee requested the trial court to make an "on the record determination pursuant to Tenn. Comp. R. & Regs. 0800-02-21-.14(2)," and an agreed order was

9

entered amending Employee's request for expedited hearing "from an [in-person] hearing to an on the record determination pursuant to Tenn. Comp. R. & Regs. 0800-02-21-.14(2)."

Employee's reliance on this particular rule was misplaced. An "on-the-record determination" as provided in Rule 0800-02-21-.14(2) is expressly reserved for compensation hearings, not expedited hearings. The rule contemplates that the trial court will review the written materials and issue a *compensation order* without the benefit of a hearing. A decision on the record involves specific procedures outlined in the regulations and does not apply to pre-trial expedited hearings. *See* Tenn. Comp. R. & Regs. 0800-02-21-.14(2)(a), (b).

However, Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(c) (2015) addresses a comparable procedure in the context of expedited hearings. It provides a trial court the discretion "to either set the matter for a hearing or enter an *interlocutory order* based on a *review of the file* upon determining that no additional information is needed to determine whether the employee is likely to prevail at a hearing on the merits of the claim." (Emphasis added). In this case, the record on appeal does not indicate whether the trial court made the determination "that no additional information [was] needed" as required for the trial court to enter an interlocutory order based on a review of the file. Since neither party raised this issue on appeal, we need not address it.

The trial court in this case concluded from its review of the file that "[t]he various histories given by [Employee] directly conflict with one another"; that Employee "vacillated between referencing an injury sustained while using a 'jack hammer' versus a 'vibrating drill'"; and that Employee's "contradictory statements regarding the alleged occurrence on November 21, 2014, [are] insufficient to establish that he is entitled to workers' compensation benefits." Those findings and conclusions are presumed to be correct, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-239(c)(7). Determining where the preponderance of the evidence lies requires that we weigh in depth the trial court's factual findings and conclusions. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315 (Tenn. 1987). The findings and conclusions in this case are based on the written documents submitted to the trial court, including the handwritten statements of Employee, the affidavits of Employee and Jason Perillo, and the medical reports and other records in the file. *See supra* note 3. Under these circumstances, the trial court occupies no better position than do we in reviewing and interpreting documentary evidence. *See Krick v. City of Lawrenceburg*, 945 S.W.2d 709, 712 (Tenn. 1997).

Guided by the foregoing principles, we turn to the documentary evidence in this case. The report of Employee's December 1, 2014 visit with Dr. Smith, which was the earliest medical record submitted that is dated after Employee's alleged November 21, 2014 incident, states that Employee "does not recall an injury" and that Employee is an

"electrician for Walker Electric." It documents complaints of pain in the left upper extremity "for about two weeks," but gives no indication of any work related event or series of events to which Employee attributes his complaints beyond "currently lift[ing] over 40 lbs at work." The report notes a discussion concerning the doctor's recommendation of a cervical MRI to rule out radicular pain, but the report is devoid of information supporting a work-related event occurring on November 21, 2014 beyond complaints that have been present "for about two weeks." The record on appeal contains no information concerning Employee's two emergency department visits referenced in Dr. Smith's December 1, 2014 report. Furthermore, the "Plan" noted in Dr. Smith's report states that Employee " currently does not have medical insurance until next month and he is not sure what day it will go into effect once it is approved so he would like to wait on [the MRI]." The "Plan" includes no information suggesting Employee was seen by Dr. Smith for a November 21, 2014 work-related incident.

Likewise, the report of Employee's follow-up visit at Doctors Express on January 2, 2015 is silent as to an alleged November 21, 2014 incident or series of incidents involving a vibrating drill or jack hammer. In fact, the report provides a history that Employee reported he "started having pain while carrying heavy conduit pipes at work on [his] shoulder." This account appears to relate to the event documented in Employee's handwritten letter to Employer, dated October 23, 2014, wherein Employee describes his October 15, 2014 work-related injury while he "was carrying a heavy piece of conduit when [he] experienced some sharp pains in [his] lower back." It was only after Employer provided a panel of doctors and Employee selected and was seen by Dr. Eck that a medical record mentioned an alleged accident involving the use of a vibrating drill or jack hammer. When the representative of Employer's workers' compensation insurer wrote to Dr. Eck questioning causation in March 2015, Dr. Eck's letter in response opined that Employee's injury "is directly related to the workers' compensation injury which occurred on October 15, 2014." According to Dr. Eck's later affidavit, he was subsequently "provided a history from [Employee] that his employment activities on November 21, 2014 consisted of continuous use of a vibrating drill (similar to jack hammering)." Based on the history provided by Employee, Dr. Eck opined in November 2015 that "Employee's cervical and thoracic injuries are primarily a result of his employment on November 21, 2014."

Having made our own independent determination regarding where the preponderance of the evidence lies, we cannot at this stage of the case conclude that the trial court erred in denying the requested benefits.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision at this interlocutory stage of the case. Additionally, we hold that the trial court's decision does not violate any of the standards set forth in Tennessee Code

Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed and the case is remanded for any further proceedings that may be necessary.

David F. Hensley, Judge
Workers' Compensation Appeals Board



**FILED**

**February 26, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:00 A.M.**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Julian Phillips | ) Docket No. 2015-01-0208 |
| | ) |
| v. | ) |
| | ) State File No. 58335-2015 |
| Carolina Construction Solutions, et al. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 26th day of February, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Julie A. Reasonover | | | | | X | julie@jstillman.com |
| Stephen B. Morton | | | | | X | stephen.morton@mgclaw.com |
| Audrey A. Headrick, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov