IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2024

**IN RE TRADEN R., ET AL.**

**Appeal from the Montgomery County Chancery Court**
**No. MC-CH-CV-AD-20-20    M. Joel Wallace, Judge**

_____

**No. M2023-00942-COA-R3-PT**
_____

In this parental termination case, the mother appeals the termination of her parental rights to two children. The trial court found that grounds for termination had been proven and that termination of her parental rights was in the children's best interests. She appealed, raising several issues. We find that one ground for termination, abandonment for failure to support, was properly pled and proven by clear and convincing evidence; however, we reverse the ruling that the ground of abandonment by failure to visit had been proven. We also vacate the other grounds purportedly found by the trial court because they were not properly pled. We affirm the trial court's determination that termination of the mother's parental rights is in the children's best interests. Accordingly, we affirm the termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part; Reversed in Part; Vacated in Part**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

B. Nathan Hunt, Clarksville, Tennessee, for the appellant, Amber L. R.[1]

Lloydette L. and Todd L., Petitioners/Appellees, did not file a brief.

**MEMORANDUM OPINION**[2]

---

[1] This court has a policy of protecting the identity of children by initializing the last names of the children, parents, close relatives, and pre-adoptive parents and by not providing the children's exact birth dates.

[2] Tenn. Ct. App. R. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion

## FACTS AND PROCEDURAL HISTORY

On April 7, 2020, the appellees, Lloydette L.[3] ("Grandmother") and Todd L., (collectively "Petitioners") filed a petition for adoption and termination of parental rights against Amber L. R. ("Mother"), regarding her minor children, Traden M. R., born in March 2008, and Chasin A. R., born in December 2015 (collectively the "Children").

The petition also sought to terminate the parental rights of Joshua P., who is the biological father of Traden, and Gene K., who is the biological father of Chasin. The trial court found that grounds had been proven upon which the parental rights of Joshua and Gene could be terminated and that termination of their parental rights was in the best interest of the children. Consequently, the parental rights of Joshua and Gene were terminated, and neither father appealed. Thus, our discussion shall be limited to Mother's circumstances.

The petition sought to terminate Mother's parental rights on two statutory grounds. As the petition reads in pertinent part:

> Petitioners pray hereinafter that an order be entered terminating all parental rights and responsibilities of Respondent, [Mother], inasmuch as she abandoned the child as defined by T.C.A. 36-1-113(g)(1). The Respondent has not paid any child support payments for the child. Respondent has not had contact with the children since March 2019, other than token visits for brief periods approximately three (3) times. Therefore, pursuant to T.C.A. 36-1-113(g)(1) Respondent's parental rights should be terminated.

On May 22, 2020, Mother filed a pro se response in opposition to the petition. On June 12, 2020, an order was entered appointing Erin Poland as Guardian Ad Litem for the minor children. On August 20, 2020, an order was entered appointing Jennifer Scribner as counsel for Mother. On September 30, 2020, Taylor R. Dahl was substituted as counsel of record for Mother.

On November 3, 2020, Mother filed an answer in opposition to the petition to terminate her parental rights. On May 14, 2021, Mother filed an Amended Answer asserting an affirmative defense that any failure to visit or support the Children was not willful.

---

would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[3] Lloydette L. is the maternal grandmother of the children, and Todd L. is her husband.

The final hearing in this matter was conducted over the span of three days on May 10, 17, and 20, 2021. Judge Ted A. Crozier, Jr., presided over the trial; however, his term expired on August 31, 2022, before a final order was entered. Thereafter, the case was assigned to Judge M. Joel Wallace.

In a memorandum opinion and order approved by Judge Wallace, entered on May 24, 2023, Judge Wallace certified his familiarity with the case, as is required by Tennessee Rule of Civil Procedure 63. Furthermore, Judge Wallace stated that he had "determined that the proceedings in this case may be completed without prejudice to the parties." After also setting forth his findings of fact and conclusions of law in the memorandum opinion and order, Judge Wallace granted the petition for adoption and termination of parental rights.[4] On June 12, 2023, a final order of adoption was entered. Then, on July 5, 2023, an amended final order of adoption was entered, which constituted a final, appealable judgment. Mother filed her notice of appeal on June 23, 2023.

On June 29, 2023, attorney Taylor R. Dahl filed a motion to withdraw as counsel for Mother. On July 14, 2023, an order was entered granting attorney Dahl's motion to withdraw. On November 8, 2023, an order was entered appointing B. Nathan Hunt as counsel for Mother, who prepared and filed an appellate brief on behalf of Mother and who is representing Mother in this appeal.

On September 20, 2024, after Petitioners failed to timely file their appellees' brief, the clerk entered an administrative order requiring the appellees either "to file a brief within ten days or else to show cause why the appeal should not be submitted to the Court for a decision on the record and the appellant's brief." After petitioners failed to timely comply, this court ordered that "this appeal be submitted to the Court for a decision on the record and the appellant's brief." Consequently, this appeal was submitted to the Court for a decision on the record and Mother's brief.

---

[4] The final paragraph of the memorandum opinion and order suggests it was a final appealable order; however, the designation was not in compliance with Tennessee Rule of Civil Procedure 54.02, because it reads: "THAT THIS IS A FINAL ORDER AS TO THE PETITION, THIS ORDER MAY BE APPEALED BY TIMELY FILING OF NOTICE WITH THE CLERK OF THE COURT OF APPEALS." "The determination of whether Rule 54.02 certification is proper is not always easy." *Ingram v. Wasson*, 379 S.W.3d 227, 238 (Tenn. Ct. App. 2011). There are two requirements for the proper certification of a final judgment under Rule 54.02: "(1) the order must eliminate one or more but fewer than all of the claims or parties, and (2) the order must expressly direct the entry of final judgment upon an express finding of 'no just reason for delay.'" *FSGBank, N.A. v. Anand*, No. E2011-00168-COA-R3-CV, 2012 WL 554449, at *4 (Tenn. Ct. App. Feb. 21, 2012) (citations omitted) (quoting *Carr v. Valinezhad*, M2009-00634-COA-R3-CV, 2010 WL 1633467 at *2 (Tenn. Ct. App. Apr. 22, 2010)). Thus, the memorandum opinion and order entered on May 24, 2023, was not a final, appealable judgment.

**ISSUES**

Mother raises three issues in this appeal:

I.    Whether the Trial Court erred by not reopening the case for further proof or by not ordering a new trial.
II.   Whether the Trial Court erred in finding that Mother abandoned the minor children.
III.  Whether the trial court erred by finding that it was in the minor children's best interest to terminate Mother's parental rights.

**STANDARD OF REVIEW**

Under both the United States and Tennessee constitutions, "[p]arents have a fundamental constitutional interest in the care and custody of their children." *In re Connor B.*, 603 S.W.3d 773, 778 (Tenn. Ct. App. 2020) (quoting *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002)). However, parental rights are not absolute and may be terminated if there is clear and convincing evidence to justify such termination under the applicable statute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citations omitted).

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Makendra E.*, No. W2015-01374-COA-R3-PT, 2016 WL 325481, at *2 (Tenn. Ct. App. Jan. 27, 2016) (citing *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

In light of this heightened standard of proof, we must "review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests[,]" *In re Connor B.*, 603 S.W.3d at 779 (quoting *In re Carrington H.*, 483 S.W.3d 507, 525 (Tenn. 2016)), and make our "own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re Bernard T.*, 319 S.W.3d 586, 596–97 (Tenn. 2010)).

The trial court's findings of fact are reviewed de novo upon the record with a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). Questions of law, however, are reviewed de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 524 (citation omitted).

ANALYSIS

## I. TENNESSEE RULE OF CIVIL PROCEDURE 63

Generally, we would begin our analysis of a paternal termination proceeding with a discussion of the grounds. Here, however, Mother contends that the trial court erred by not reopening the case for further proof or by not ordering a new trial. This contention is based on the fact that the trial judge who approved the memorandum opinion and order and the amended final order was not the judge who presided over the three-day trial.

Judge Ted A. Crozier, Jr., presided over the trial; however, his term ended, and he retired before the final orders were entered. Thereafter, the case was assigned to Judge M. Joel Wallace.

"Rule 63 of the Tennessee Rules of Civil Procedure 'governs situations when a case must be assigned to another judge because the judge originally presiding over the case is unable to proceed.'" *Thomas v. Thomas*, 666 S.W.3d 456, 458 (Tenn. Ct. App. 2022) (quoting *Shofner v. Shofner*, 181 S.W.3d 703, 711 (Tenn. Ct. App. 2004)). Specifically, the rule provides:

> If a trial or hearing has been commenced and the judge is unable to proceed, **any other judge may proceed upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties**. In a trial or hearing without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. In any trial or hearing with or without a jury, the successor judge may recall any witness.

Tenn. R. Civ. P. 63 (emphasis added).

The memorandum opinion and order approved by Judge Wallace states, in the beginning paragraph:

> This cause came to be heard before Judge Ted A. Crozier, Jr. on May 10, 17, and 20, 2021. [fn. 1][5] As Judge Crozier's successor in office, and pursuant to Tenn. R. Civ. P. 63, I hereby certify my familiarity with the record in this case. Further, I have determined that the proceedings in this case may be completed without prejudice to the parties. Further, based upon the representations of counsel, I find that no party is requesting to recall any

---

[5] The footnote reads: "Judge Crozier's term of office expired on August 31, 2022, and his authority to rule on this matter expired prior to his entering an order disposing of this matter."

witness pursuant to the terms of the referenced rule. Specifically, I have reviewed the audio recording of the hearing, the proposed Findings of Facts and Conclusions of Law of each party, and various caselaw applicable to this matter.

Thus, we find that Judge Wallace complied with Rule 63 by confirming his familiarity with this case. We also find it significant that Judge Wallace noted "that no party is requesting to recall any witness pursuant to the terms of the referenced rule." While Mother does not contend that she requested or was denied the right to recall a witness, she contends that we should vacate the judgment and require a new trial because "the trial court erred by not reopening the case for further proof or by not ordering a new trial." However, Mother fails to cite to the record where she made such a request in the trial court, and we find no such request. Accordingly, we find that Mother has waived this issue. *See Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010).

Nevertheless, as Mother correctly notes, our Standard of Review of this parental termination case is different from the typical case because Judge Wallace did not preside over the trial. As we explained in *In re Temperance A.*,

> Our review in this case, however, has a nuance atypical of parental termination cases. As noted above, the term of office of the judge who presided over the trial and observed the live testimony of the witnesses ended before issuance of a decision in this case. With the assignment of another judge to the case, the successor judge afforded the parties an opportunity to recall witnesses, but they instead elected to have the case decided upon the transcripts and exhibits. Accordingly, the trial court's factual findings, including the judge's credibility findings, were based *entirely* on the trial court's review of cold transcripts and exhibits. The successor judge did not observe any live testimony from any of the witnesses.

> The Tennessee Supreme Court has explained that "[w]hen findings are based on documentary evidence, an appellate court's ability to assess credibility and to weigh the evidence is the same as the trial court's." *Kelly v. Kelly*, 445 S.W.3d 685, 693 (Tenn. 2014). In reviewing factual findings in such cases, the Tennessee Supreme Court has indicated that Tennessee appellate courts afford "no deference and no presumption of correctness to the trial court's findings of fact." *Fisher v. Hargett*, 604 S.W.3d 381, 395 (Tenn. 2020); *see also Henry A. Knott Co., Div. of Knott Indus. v. Chesapeake & Potomac Tel. Co. of W. Virginia*, 772 F.2d 78, 85 (4th Cir. 1985) ("The problem of the successor judge . . . is that one person hears the testimony and another person makes the factual findings without having seen or heard the witnesses. . . . Deference to such findings, by . . . an appellate court, would be misplaced in such a case."); *Bankard Am., Inc. v. Univ.*

*Bancard Sys., Inc.*, 203 F.3d 477, 481 (7th Cir. 2000) (observing that the typical standard of review relevant to factual findings "is not a good fit" in successor judge cases decided entirely upon the record because a successor judge "enjoyed no special advantage in determining credibility and gauging the evidence—he read the record, just as we have now done"). Accordingly, "when factual findings are based on documentary evidence, an appellate court may draw its own conclusions with regard to the weight and credibility to be afforded that documentary evidence." *Kelly*, 445 S.W.3d at 693 (citing *Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 271 (Tenn. 2009)); *c.f. Krick v. City of Lawrenceburg*, 945 S.W.2d 709, 712 (Tenn. 1997) (indicating that "where the issues involve expert medical testimony and all the medical proof is contained in the record by deposition, . . . then this Court may draw its own conclusions about the weight and credibility of that testimony, since we are in the same position as the trial judge"). The Tennessee Supreme Court observed that "[a]s to the successor judge's analysis of the trial record, this Court is in the same position to evaluate the transcript and exhibits as is the successor judge," and indicated that "a de novo review of the successor judge's analysis of the trial record is appropriate." *State v. Ellis*, 453 S.W.3d 889, 909 (Tenn. 2015). In a parental termination decision involving a successor judge deciding a case without hearing live testimony, this court observed that, while deference is normally afforded to a trial court's findings, where those findings are based upon the trial transcript and exhibits and not observation by the successor judge of live testimony, this court "may draw our 'own conclusions with regard to the weight and credibility' of the evidence." *In re Isaiah F.*, No. M2023-00660-COA-R3-PT, 2024 WL 1765247, at *4 n.3 (Tenn. Ct. App. Apr. 24, 2024) [(]quoting []*Kelly*, 445 S.W.3d at 693). Applying this standard of review, without presumption of correctness as to the trial court's findings, we conduct our own de novo review of the transcripts and exhibits presented to the trial court. *See Sampson v. Aircraft Maint., Inc.*, No. M2021-01277-COA-R3-CV, 2023 WL 164164, at *8 (Tenn. Ct. App. Jan. 12, 2023).

No. M2023-00641-COA-R3-PT, 2024 WL 2891918, at *9 (Tenn. Ct. App. June 10, 2024), *perm. app. denied*, (Tenn. Aug. 9, 2024).

Accordingly, our review of the issues in this appeal shall be pursuant to the above standard, when applicable.

## II. GROUNDS

To terminate parental rights, a court must find that at least one statutory ground for termination has been proven by clear and convincing evidence. *In re Carrington H.*, 483 S.W.3d at 535 (citing Tenn. Code Ann. § 36-1-113(c)).

- 7 -

We begin by noting that except for the ground of abandonment for failure to support, it is not entirely clear which ground or grounds the trial court found had been proven. Moreover, and significantly, the petition only sought to terminate Mother's parental rights on two grounds, abandonment for failure to support and abandonment for failure to visit. This is evident from the petition, which states:

10. . . . Petitioners pray hereinafter that an order be entered terminating all parental rights and responsibilities of Respondent [Mother], inasmuch as she abandoned the child as defined by T.C.A. 36-1-113(g)(1). The Respondent has not paid any child support payments for the child. Respondent has not had contact with the children since March 2019, other than token visits for brief periods approximately three (3) times. Therefore, pursuant to T.C.A. 36-1-113(g)(1) Respondent's parental rights should be terminated.

However, the trial court appears to have found multiple grounds for termination that were not asserted in the petition. This is evident from the memorandum opinion and order, which reads in pertinent part:

3. Petitioners have established by clear and convincing evidence that grounds for Termination and Adoption exists based on the following grounds:

a. The minor children have been abandoned by the Respondents as no care or support of any type or sort has been rendered or paid for the benefit of the minor children by the Respondents within the four (4) months preceding the filing of the Petition as provided for in Tenn. Code Ann. § 36-1-102(1)(A).

b. There has been no support provided to the minor children as provided for in Tenn. Code Ann. § 36-1-102(1)(A).

c. There has only been "token" visitation as provided for in Tenn. Code Ann. § 36-1-102(1)(A).

d. Respondent Joshua P[.] has abandoned the minor child Traden R.

e. Respondent [Gene K.] has abandoned the minor child Chasin R.

f. Respondent [Mother] has abandoned both minor children.

- 8 -

g. Respondent [Gene K.] and Respondent [Mother] have failed to comply with the permanency plan as implemented by DCS.

h. The children were removed from the home and from the physical and legal custody of Respondent [Gene K.] and Respondent [Mother], for a period of more than six (6) months.

i. The conditions that led to the children's removal from Respondent [Gene K.] and Respondent [Mother] still exist and would cause the children to be subjected to further abuse or neglect.

Why the trial court found that grounds had been proven other than the two specifically pled in the petition is not clear from the record, and Petitioners failed to file an appellees' brief in which they would have had the opportunity to provide an explanation.[6] Nevertheless, we can readily vacate the other grounds because due process requires that the parent be notified of the alleged grounds for termination.

> Parental rights can only be terminated on grounds that were alleged in the termination petition. *See In re M.J.B.*, 140 S.W.3d 643, 655–56 (Tenn. Ct. App. 2004). Notice is "a fundamental component of due process." *In re W.B., IV*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *13 (Tenn. Ct. App. Apr. 29, 2005); *see also Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002) ("Basic due process requires 'notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (citation omitted)). Pleadings should give the opposing party enough notice of the issues to prepare a defense. *Keisling*, 92 S.W.3d at 377. In the context of parental termination, due process requires that the parent be notified of the alleged grounds for termination. *In re Jeremiah N.*, No. E2016-00371-COA-R3-PT, 2017 WL 1655612, at *8 (Tenn. Ct. App. May 2, 2017).

*In re Ashlynn H.*, No. M2020-00469-COA-R3-PT, 2021 WL 2181655, at *3 (Tenn. Ct. App. May 28, 2021); *see also In re Carrington H.*, 483 S.W.3d at 534; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (stating that two "essential requirements of due process . . . are notice and an opportunity to respond . . . either in person or in writing, why proposed action should not be taken").

---

[6] The memorandum opinion and order indicates that it was drafted by Jacob Mathis, Petitioners' counsel, and served upon all parties and their counsel when it was submitted to the trial court for approval.

Because the only grounds asserted in the petition are the grounds of abandonment by failing to provide support and failure to visit pursuant to Tennessee Code Annotated § 36-1-102(1)(D), we vacate all other grounds found by the trial court for lack of due process.

A. Failure to Support the Children

Tennessee Code Annotated § 36-1-102(1)(D) provides that "failed to support" or "failed to make reasonable payments toward [a] child's support" consists of "the failure, for a period of four (4) consecutive months [immediately preceding the filing of the petition to terminate the parental rights of the parent], to provide monetary support or the failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D).[7] The statute defines "token support" as "support [that], under the circumstances . . . , is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). "That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period[.]" Tenn. Code Ann. § 36-1-102(1)(D). However, Mother asserted an affirmative defense, arguing that her failure to provide support was not willful.

On July 1, 2018, the Tennessee General Assembly amended Tennessee Code Annotated § 36-1-102(1)(A) to remove the element of willfulness from the definition of abandonment by failure to support or visit. Accordingly, rather than include willfulness as an element of this ground, Tennessee Code Annotated § 36-1-102(1) provides it as an affirmative defense:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. **The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful**. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1)(I), *enacted by* 2018 Tennessee Laws Pub. Ch. 875 (H.B. 1856), *eff.* July 1, 2018 (emphasis added).

The trial court found that Mother and the Children had resided with Petitioners in December 2017 and January 2018, after which Chasin and Mother moved out while Traden

---

[7] The petition for termination and adoption was filed April 7, 2020. Throughout, we refer to the applicable version of the statute, the version in effect at the time the petition was filed. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017) (holding that the version of a termination statute "that was in force when the petition was filed governs this case") (quoting *In re Tianna B.*, No. E2015-02189-COA-R3-PT, 2016 WL 3729386, at *7 (Tenn. Ct. App. July 6, 2016)).

continued to reside with Petitioners.[8] It went on to find that the Tennessee Department of Children's Services ("DCS") placed the Children with Petitioners in 2018, where they have remained ever since,[9] and failed to support the Children thereafter. In pertinent part, the trial court found that:

> 23. Since 2018, when Petitioners were transferred custody of the minor children, and including the four (4) months preceding the filing of the Petition for Termination and Adoption, Respondent [Mother] has not paid any support on behalf of the minor children.

The record fully supports these findings. Grandmother testified that she received no financial support or gifts for the Children from Mother during the four-month period preceding the filing of the petition, and Mother failed to present evidence that she did. We note, however, that Mother had given Petitioners $637.00 in food stamps for the benefit of the Children and approximately $1,200 on her debit card, which Mother contends was to cover expenses for the period Mother was in jail in 2017. Grandmother disputes this fact, insisting the $1,200 was to repay a loan she gave Mother. Additionally, when Mother and the Children were living with Petitioners in 2017, Mother paid rent of approximately $400 a month and was buying the food, clothes, and diapers for the Children.

However, all of the foregoing payments and financial assistance were provided long before the relevant four-month period immediately preceding the filing of the termination petition on April 7, 2020. Furthermore, there is no evidence to support a finding that Mother provided any support during the relevant four-month period. Nevertheless, Mother contends her failure to provide support was not willful. The facts in this record, including the testimony of Mother and Chasin's father, prove otherwise.

Mother and Chasin's father, Gene K., were married and living together at all times material to this issue. Gene K. made a living in the "logging business" as a sole proprietor. Gene owned his own logging truck and equipment.[10] Mother assisted him by keeping the books, maintaining the customer contracts, and providing administrative services. Mother also testified that Gene's logging business was "our business" and that the money he earned was "our money." She also testified that Gene was capable of providing for the family. When Gene was called to testify, he stated that his income was dependent on the weather.

---

[8] Traden remained with Petitioners so he could continue to attend the same school he had been attending. Chasin was not yet of school age, so Chasin resided with Mother and his father, Gene K., until a domestic violence incident involving his parents prompted DCS to intervene, take custody of Chasin, and place him with Petitioners.

[9] The trial court also made a finding that "DCS placed the children with Petitioners in 2018 after the children were removed from the custody of Respondents [Mother] and [Chasin's father]." However, the record contains minimal information and no documentation regarding those proceedings.

[10] He testified that he has owned and operated his logging business for fifteen or more years.

As he explained it, while his earnings were minimal during the winter as well as during bad weather, specifically heavy rains, he often earned $3,000 to $6,000 a week and sometimes as much as $20,000 a week.

Moreover, Mother and Gene both testified that they lived in a four-bedroom home, a trailer home that was attached to a foundation, with a large fenced-in yard, which they were buying on a "lease-to-own" basis.

Based on these and other facts in the record, we find that Mother had the ability to support the Children during the relevant four-month period, that she provided no support during this period, and her failure to support the Children was willful.

Thus, we affirm the trial court's finding that Petitioners proved by clear and convincing evidence that Mother abandoned the Children by failing to support them under Tennessee Code Annotated § 36-1-102(1)(D) during the four-month period immediately preceding the filing of the petition in this cause.

### B. Failure to Visit the Children

Except for the ground of abandonment for failure to support, it is not entirely clear whether the trial court found that Petitioners had proven any other ground, including the ground of abandonment by failing to visit the children. *See* Tenn. Code Ann. § 36-1-113(g)(1); *see also* Tenn. Code Ann. § 36-1-102(1)(A)(i). Nevertheless, as noted earlier, the trial court found:

> 3. Petitioners have established by clear and convincing evidence that grounds for Termination and Adoption exists based on the following grounds:
>
> > a. The minor children have been abandoned by the Respondents as no care or support of any type or sort has been rendered or paid for the benefit of the minor children by the Respondents within the four (4) months preceding the filing of the Petition as provided for in Tenn. Code Ann. § 36-1-102(1)(A).
> >
> > b. There has been no support provided to the minor children as provided for in Tenn. Code Ann. § 36-1-102(1)(A).
> >
> > **c. There has only been "token" visitation as provided for in Tenn. Code Ann. § 36-1-102(1)(A).**

(Emphasis added).

- 12 -

While paragraph 3.a. clearly states the trial court's finding that Petitioners proved the ground of abandonment for failure to support, we are reluctant to find that paragraph 3.c., immediately above, is sufficient to establish that the trial court also found that Petitioners had proven abandonment for failing to visit. Nevertheless, and for completeness in our review, we will assume that the trial court also found that the ground of abandonment for failure to visit had been proven.

For purposes of this case, a failure to visit "means the failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). Token visitation is defined as "visitation [that], under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

As noted above, Mother asserted the affirmative defense of lack of willfulness in failing to visit. *See* Tenn. Code Ann. § 36-1-102(1)(I) (The lack "of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure" to the ground of abandonment.). When properly raised, "the parent or guardian shall bear the burden of proof that the failure to visit or support was not willful." *Id*.

In her testimony at trial, Mother repeatedly stated that she visited the Children during the four-month period and discussed the extent of each visit. Specifically, she testified about a December 2019 visit during which she, the Children, and Grandmother went on an extended walk. She also testified about having "Christmas dinner" in 2019 with the Children and Petitioners. She also attended Traden's birthday party in March 2020. Significantly, all three visits occurred during the relevant four-month period, and Grandmother acknowledged the three visits. The trial court, however, did not discuss any of the three visits that occurred during the relevant four-month period. Thus, it did not discuss whether these visits were or were not "perfunctory" or of "such short duration as to merely establish minimal or insubstantial contact with the child." *See* Tenn. Code Ann. § 36-1-102(1)(C).

The only two findings of fact the trial court made concerning Mother's visitation with the Children are generalized, using such terms as "a handful of times." They read:

> 21. Since 2018, when Petitioners were transferred custody of the minor children, and including the four (4) months preceding the filing of the Petition for Termination and Adoption, Respondent [Mother] has only contacted Petitioners a handful of times seeking to visit with the minor children.

22. Since 2018, when petitioners were transferred custody of the minor children, and including the four (4) months preceding the filing of the Petition for Termination and Adoption, Respondent [Mother] has only visited the minor children a handful of times.

Based on the evidence in the record, we find that the three visits that occurred during the relevant four-month period were more than of "such short duration as to merely establish minimal or insubstantial contact with the child[ren]." Tenn. Code Ann. § 36-1-102(1)(C). Thus, we conclude that the three visits during the relevant four-month period were neither perfunctory nor token. *See* Tenn. Code Ann. § 36-1-102(1)(C).

Mother also testified that the reason she did not visit more often was due to Grandmother refusing visitation. Grandmother admitted refusing other visits, generally on the ground that she would not allow visitation if Gene K., Chasin's father, attended. The trial court, however, did not discuss nor make any findings regarding the issue of willfulness in the context of visitation.

Having considered the evidence in the record regarding willfulness, we find that Mother carried her burden of proof and established by a preponderance of evidence that her failure to visit more frequently was not willful. *See* Tenn. Code Ann. § 36-l-102(1)(I) (A parent who alleges that their abandonment was not willful "bear[s] the burden of proof that the failure to visit . . . was not willful. Such defense must be established by a preponderance of evidence."). Therefore, Mother's failure to visit more often or more extensively was not willful.

For completeness, we also note that the trial court discussed the issue of visitation in its analysis of the Children's best interests. In discussing statutory factor (3), whether the parent has maintained regular visitation or other contact with the child, the court found:

> The final order of the Juvenile Court gave Grandmother discretion as to visits with the parents, placing her in a situation of navigating the parents' drug use, opioid addiction, and criminal issues all while using her best judgement in allowing visits: **Mother has visited routinely but it is uncertain how meaningful these visits have been**. **Father has had token visits with the children.**

(Emphasis added). Thus, the court found Father's visits were "token," but it did not make a similar finding concerning Mother's visits. We note, however, that the finding in the context of a specific time frame. Thus, it may or may not be inconsistent with the trial court's finding that "[Mother] has only visited the minor children a handful of times" or that her visits were "token." Regardless, it does not change our findings that Mother's visits during the four-month period were not token and that her failure to have more visits was not willful.

- 14 -

Accordingly, we find that the evidence is insufficient to prove by clear and convincing evidence the ground of abandonment for failure to visit.

Assuming arguendo that the trial court found the ground of abandonment for failure to visit had been proven, we reverse that finding. Therefore, we hold that the only ground properly established upon which Mother's parental rights could be terminated is the ground of abandonment for failure to support.

### III. THE CHILDREN'S BEST INTERESTS

Once a court has found a parent to be unfit based on clear and convincing evidence of one or more grounds for termination, the interests of parent and child diverge. *In re Jude M.*, 619 S.W.3d 224, 244 (Tenn. Ct. App. 2020) (citations omitted). "While the parent's interests do not evaporate upon a finding of unfitness, the focus of the proceedings shifts to the best interests of the child." *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005) (citation omitted).

"Facts considered in the best interest analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citations omitted). After a court makes its factual findings regarding the relevant best interest factors, it must consider the combined weight of the best interest factors to determine whether it amounts to clear and convincing evidence that termination is in the child's best interests. *See id.*; *see also In re Kaliyah S.*, 455 S.W.3d 533, 555–56 (Tenn. 2015).

In determining whether termination of parental rights is in a child's best interest, courts must consider the non-exhaustive list of statutory factors in Tennessee Code Annotated § 36-1-113(i)(1). *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). These statutory factors are not exclusive, and courts are free to consider any other proof offered at a termination proceeding that is relevant to the best interest analysis. *In re Neveah M.*, 614 S.W.3d 659, 679 (Tenn. 2020) (citations omitted).

The best interest factors codified in Tennessee Code Annotated § 36-1-113(i) in effect in 2020 when this petition was filed include the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to affect a lasting adjustment after reasonable efforts by available social services agencies for such

duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

The trial court made findings regarding each of the statutory best interest factors, and we find the following factors and findings most relevant.[11]

---

[11] The trial court made the following additional findings.

Regarding Factor (2), whether the parent has failed to affect a lasting adjustment after reasonable efforts by available social service agencies for such duration of time that lasting adjustment does not reasonably appear possible, the court found:

This factor is applicable as the Department of Children's Services provided parents with objectives that should be met prior to the children returning

Regarding Factor (1), whether the parent has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian, the court found:

> The parents testified to a history of legal issues, difficulty obtaining drivers licenses, and a history of drug use. As of today, neither parent has a driver's license, yet both continue to operate vehicles. They both receive weekly doses of Subutex for opioid addiction. They have received these doses for years but have never participated in in-patient treatment.

> Petitioners are the only ones that have made an adjustment of circumstances. They testified that they sold their house with the intentions of traveling and maintaining their role as, in essence, grandparents. Due to caring for the minor children, the Petitioners have since built a home that provides a loving, safe, nurturing environment for both children.

As for Factor (4), whether a meaningful relationship has otherwise been established between the parent and child, the court found: "The children have a relationship with Mother however it is unclear as to how meaningful. There appears to be little to no relationship with Father.[12] There is a loving, trustful, and meaningful relationship with Petitioners."

---

to their home. The parents had sufficient time to complete these services even prior to the adjudication date where the children were found to be dependent/neglected, and then several months post-adjudication. The juvenile court eventually closed the case and relieved counsel. Parents provided some proof at trial that they comp[l]eted services requested by DCS but the date on the documents indicated services were provided well-after the filing of the petition for termination. It is imperative to mention that DCS did not have standing to file a TPR as the children were not in custody. Because the Petitioners were able to care for the children, they did not have to go into the custody of the State.

As for Factor (3), whether the parent has maintained regular visitation or other contact with the child, the court found:

> The final order of the Juvenile Court gave Grandmother discretion as to visits with the parents, placing her in a situation of navigating the parents' drug use, opioid addiction, and criminal issues all while using her best judgement in allowing visits. Mother has visited routinely but it is uncertain how meaningful these visits have been. Father has had token visits with the children.

[12] The petition sought to terminate the parental rights of both Traden's father and Chasin's father. The whereabouts of Traden's father has been unknown for years, and the best interest findings addressed in this opinion are not relevant to Traden's father. The references to "Father" in the best interest findings all pertain to Chasin's father, Gene K.

Concerning Factor (5), which pertains to the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition, the court found:

Children need permanency and consistency. They have been with the Petitioners for years. Testimony provided a clear picture of the involvement of Petitioners even before the DCS case. The children were actually living with Petitioners and only visiting the parents in a hotel when [DCS] became involved. The children consider Petitioners as their primary caregivers and to change that would compromise feelings of protection and safety. Both children are thriving and doing well, to interrupt that by changing their environment, would certainly be detrimental if not alter the entire trajectory of their lives.

Regarding Factor (6), whether the parent or other person residing with the parent has shown brutality, physical, sexual, emotional, or psychological abuse, or neglect toward the child, or another child or adult in the family or household, the court found:

Evidence supported a history of violence in parents' home. Mother minimized events that occurred that caused the children to feel scared or unsafe. Father denied a domestic history. The Guardian ad Litem has grave concern regarding Mr. K[.]'s [Chasin's father] impulse and anger issues as well as concerns with mother's co-dependency and ability to protect the children.

As for Factor (7), whether the physical environment of the parent's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent consistently unable to care for the child in a safe and stable manner, the court found:

As discussed in factor six (6), there is a history of violence in the home including allegations that Father put Mother's head through a window, an allegation that Mother minimized. The Court heard from the minor child and assessed any concerns that may have been relevant. From all testimony provided, it is clear that the parents' home is unpredictable at best.

The children are currently in a loving, caring, safe and stable home. They are engaged in routine and enjoy their environment.

Concerning Factor (8), whether the parent's mental and/or emotional status would be detrimental to the child or prevent the parent from effectively providing safe and stable care and supervision for the child, the court found: "A great predictor of a safe environment

is one that is predictable. There is nothing predictable about substance abuse, opioid addiction, multiple felony convictions, and violence in the home."

As for Factor (9), whether the parent has paid child support consistent with the child support guidelines promulgated by the department pursuant to Tennessee Code Annotated § 36-5-101, the court found: "Neither parent has been consistent in the emotional, physical, or financial support of these children."

The trial court then summarized its findings, stating:

> Both minor children have a significant and loving relationship with the Petitioners; they are the only reliable caregivers the children have known. Each one of these factors favor Petitioners. The Respondents who took part in the hearing have engaged in a toxic and co-dependent relationship that has resulted in losing custody of the children. They fail to see their responsibility in the process. Without accountability, it is doubtful that either of these parents will ever be able to make changes to sustain a healthy environment necessary to promote the wellbeing of children.

Based on the foregoing findings, the trial court found that it was in the Children's best interest to terminate Mother's parental rights.

Having conducted our own de novo review of the transcripts and exhibits presented to the trial court as *In re Temperance A.* instructs, *see id.* 2024 WL 2891918, at *9, we find that the evidence supports each of the trial court's best interest findings stated above.

After a court makes its factual findings regarding the relevant best interest factors, it must then determine whether the combined weight of the best interest factors amounts to clear and convincing evidence that termination is in the child's best interests. *In re Carrington H.*, 483 S.W.3d at 535; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56.

> Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis."

*In re Gabriella D.*, 531 S.W.3d at 682 (quoting *In re Audrey S.*, 182 S.W.3d at 878) (citations omitted).

Here, the trial court found that Petitioners had proven by clear and convincing evidence that termination of Mother's parental rights was in the Children's best interests. Based upon our review of the record and our consideration of the relevant best interest factors as found by the trial court, we agree that the combined weight of the relevant factors amounts to clear and convincing evidence that termination of Mother's parental rights is in best interests of the Children. *In re Carrington H.*, 483 S.W.3d at 535; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56.

Accordingly, we affirm the trial court's determination that termination of Mother's parental rights is in the Children's best interests.

Because we have affirmed the trial court's determination that a ground for termination of Mother's parental rights has been proven and that termination of Mother's parental rights is in the Children's best interests, we affirm the termination of Mother's parental rights to the Children.

For these reasons, we affirm the judgment of the trial court as modified above.

## CONCLUSION

Accordingly, we reverse in part, vacate in part, and affirm in part the judgment of the trial court. Costs of appeal are assessed against Petitioners, Lloydette L. and Todd L.

_____
FRANK G. CLEMENT JR., P.J., M.S.